[No. D057440. Fourth Dist., Div. One. Nov. 21, 2011.]

AMANDA KIGHT et al., Plaintiffs and Appellants, v. CASHCALL, INC., Defendant and Respondent.

## Counsel

Law Offices of Douglas J. Campion, Douglas J. Campion; Hyde & Swigart and Joshua B. Swigart for Plaintiffs and Appellants.

Manatt, Phelps & Phillips, Brad W. Seiling, Joanna S. McCallum, Joanna H. Sattler and Justin C. Johnson for Defendant and Respondent.

## Opinion

**HALLER, J.**—Plaintiffs brought individual and class claims against CashCall, Inc., a consumer finance company, alleging CashCall secretly monitored their telephone conversations with CashCall employees without plaintiffs' knowledge or consent. Plaintiffs alleged this practice violated their common law, statutory, and constitutional privacy rights. The court certified a class on one of these claims, an alleged violation of Penal Code[1] section 632, which imposes liability on a person (defined to include a "corporation") who intentionally "eavesdrops upon or records [a] confidential communication" and engages in this conduct "without the consent of all parties."

CashCall successfully moved for summary adjudication on the section 632 claim. The court found as a matter of law a corporation does not violate the statute when one of its supervisory employees secretly monitors a conversation between a customer and another corporate employee. The court agreed with CashCall's argument that section 632 did not apply because the eavesdropping prohibited under the statute requires a third party and there were only two parties to the alleged monitored conversations—the corporation and the customer.

We reverse the summary adjudication order. The trial court's statutory interpretation is inconsistent with section 632's language and purpose. In *Flanagan v. Flanagan* (2002) 27 Cal.4th 766 [117 Cal.Rptr.2d 574, 41 P.3d 575] (*Flanagan*), our Supreme Court held that section 632 protects an individual's right to know who is listening to a telephone conversation. Consistent with this holding, we conclude the statute applies even if the unannounced listener is employed by the same corporate entity as the known participant in the conversation. We further determine that on the summary adjudication record before us triable factual issues exist on whether the alleged telephone conversations were "confidential communication[s]" within the meaning of section 632 and whether plaintiffs had objectively reasonable expectations that their conversations would not be secretly monitored.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

## FACTUAL AND PROCEDURAL BACKGROUND

CashCall is a finance company that provides unsecured loans to consumers. Plaintiffs' amended complaint alleged that each of the plaintiffs borrowed money from CashCall, and, in making the loans and collecting delinquent payments on those loans, CashCall "secretly" monitored and eavesdropped on telephone conversations between CashCall employees and plaintiffs, including conversations pertaining to "sensitive financial information." Plaintiffs alleged CashCall conducted the "illegal monitoring . . . for the purpose of assisting [CashCall] in its collection efforts" without the "knowledge or consent" of plaintiffs or the class members. Plaintiffs further alleged CashCall's "corporate representative has admitted under oath that as a regular part of its ongoing daily business practices, [CashCall] monitors, eavesdrops on, or otherwise makes unauthorized connections to a number of collection calls with alleged debtors."

The amended complaint alleged several causes of action, including (1) unlawful invasion of privacy in violation of sections 631 and 632; (2) unlawful intrusion into private affairs; and (3) violation of the right to privacy under the California Constitution. Plaintiffs sought statutory damages for violation of section 632 (the greater of $5,000 per violation or three times the amount of actual damages) and an injunction to prohibit CashCall from continuing to engage in this practice. (See § 637.2.)

Based on precertification discovery, the court allowed plaintiffs to amend the first amended complaint to substitute new class representatives because the facts showed CashCall had not monitored conversations of the original named plaintiffs. (See *CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273 [71 Cal.Rptr.3d 441].)

The trial court then certified a class on plaintiffs' claim alleging a violation of "section 632 by 'eavesdropping' " and seeking "the statutory penalty of $5,000." The court defined the class as: " 'All persons that were physically in California at the time they had telephone conversations in which defendant [CashCall], its employees, contractors, agents or other persons working on [CashCall's] behalf, monitored . . . such conversations, within one year prior to May 16, 2006, the date of filing of the original Complaint. . . .' " (Underscoring omitted.) The court also identified two subclasses. Subclass one consisted of class members monitored on *outbound* calls from CashCall employees or agents to the class member. Subclass two consisted of class members who were monitored on *inbound* calls from the class member to a CashCall employee or agent.

CashCall then moved for summary adjudication on plaintiffs' section 632 class claim, and plaintiffs opposed the motion. Of relevance here, the following facts were before the court in the summary adjudication proceedings.

During the relevant times, consumers applied for loans from CashCall by applying online or by calling one of CashCall's advertised toll-free numbers and speaking to a CashCall representative. All borrowers, including online applicants, must call CashCall and speak to a CashCall representative to complete their loan applications. All members of the class are or were CashCall borrowers.

CashCall has a production department and a servicing department. The production department generates new loans, which includes taking applications, handling underwriting, and providing information to consumers interested in securing a loan. The servicing department focuses on collections and debt recovery and ensuring payment is made on existing loans.

During the class period, CashCall randomly monitored 547 calls to and from the servicing department: 225 inbound calls and 322 outbound calls. The calls were monitored for quality control purposes to ensure CashCall employees were following CashCall's policies and procedures and applicable laws governing debt collections. Supervisors monitored calls either electronically by using CashCall's EnsemblePro Concerto software or by physically sitting next to the representative and "plugging" into the call. For purposes of the summary adjudication motion, it was assumed that the calls were not recorded; the supervisor would listen to the call while the conversation was occurring.

With respect to call monitoring disclosures, CashCall used an interactive voice response system (IVR) to receive and route calls. Under this system, a caller was greeted by an automated message that offered two options. Option 1 prompted the callers to press "1" if they did not have an existing CashCall loan. Option 2 prompted callers to press "2" if they had an existing loan. A caller who selected either of these announced options automatically heard the "Call Monitoring Disclosure" which stated: "This call may be monitored or recorded for quality control purposes." The IVR would then route the call to the selected department.

If a caller did not press a button or pressed "0," the caller would be connected to a CashCall operator. The caller would then hear the Call Monitoring Disclosure only if the operator routed the call to a particular department as opposed to a particular representative. Additionally, a caller could press "4" and then dial a representative's direct extension. This "4" option was not included on the IVR, but a caller would sometimes learn of

this option after having spoken with a CashCall representative. The Call Monitoring Disclosure was not announced if a caller reached a CashCall employee through the "4" option. Additionally, the Call Monitoring Disclosure was never announced on outbound calls (calls from a CashCall employee to a class member).

At the outset of the borrower relationship, CashCall generally provides written notice to all borrowers that information disclosed to CashCall would be disseminated to "those employees who need to know that information to provide products or services to you."

Based on these facts and evidence relating to the phone conversations of three named plaintiffs, CashCall argued plaintiffs' section 632 claim failed as a matter of law because (1) section 632 does not prohibit the type of participant business call monitoring alleged in the complaint because the statute prohibits only an unannounced third party from overhearing a conversation and two corporate employees count as a single party under corporations law; (2) the undisputed facts establish plaintiffs' calls with CashCall employees were not "confidential communications" within the meaning of section 632; and (3) each plaintiff heard the Call Monitoring Disclosure during the borrower-lender relationship.

After considering the parties' papers and conducting a hearing, the court granted the summary adjudication only on the first ground. The court stated that: "Under the undisputed facts . . . , the 'parties' to the monitored calls in issue were the Class Member-borrower and corporate defendant CashCall; and, no 'person' other than the Class Member-borrower and CashCall heard the communications during the monitored calls. Therefore, there was no violation of section 632." Based on this ruling, the court declined to address CashCall's alternate grounds for the motion.

Plaintiffs appeal.[2]

## DISCUSSION

### I. *Standards of Review*

Summary adjudication is proper if the papers submitted show there is no triable issue as to any material fact and the moving party is entitled to prevail

---

[2] On our own motion, we raised the issue whether the summary adjudication order was appealable because the named plaintiffs had remaining unresolved claims against CashCall. We conclude the order is appealable under the death knell exception to the one final judgment rule because the order terminated all class claims and left the named plaintiffs' individual claims for further adjudication in the lawsuit. (See *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756–762 [122 Cal.Rptr.3d 153, 248 P.3d 681].)

on a cause of action as a matter of law. (See Code Civ. Proc., § 437c, subd. (f)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant moving for summary adjudication bears the initial burden to show the cause of action has no merit, i.e., "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists . . . ." (*Ibid.*)

We review a summary adjudication order de novo. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].) We strictly construe the moving party's evidence and liberally construe the evidence favoring the party opposing the motion. (*Ibid.*) We resolve all doubts in favor of the opposing party. (*Ibid.*) We affirm an order granting summary adjudication if it is legally correct on any ground raised in the trial court proceedings. (*Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 120 [127 Cal.Rptr.3d 883].)

■ The issues on appeal require that we interpret section 632. In doing so, we independently review the statute, applying well-established statutory construction principles. Our "fundamental task" is to ascertain and implement the legislative intent. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].) " ' "[W]e look first to the words themselves." ' [Citation.]" (*Branson v. Sharp Healthcare, Inc.* (2011) 193 Cal.App.4th 1467, 1475 [123 Cal.Rptr.3d 462].) Statutory language generally provides the most reliable indicator of legislative intent. (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 [56 Cal.Rptr.3d 880, 155 P.3d 284].) " '[W]e read the words of the statute according to their "usual, ordinary, and common sense meaning" consistent with the statute's apparent purpose . . . .' [Citation.] ' "When the [statutory] language is clear and unambiguous, there is no need for construction. . . ." ' [Citation.]" (*Branson, supra*, at p. 1475.)

If the statutory language is ambiguous, " 'courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' " (*Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1163 [72 Cal.Rptr.3d 624, 177 P.3d 232]; see *People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) "[W]e ' "select the construction that comports most closely with the apparent intent of the Legislature,

with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' " (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 272.)

■ Although the Legislature imposed penal sanctions and civil liability for section 632 violations, the sole issue before us is whether CashCall may be held civilly liable. We thus apply interpretation principles applicable to a civil statute and make no attempt to determine whether our interpretation extends to a criminal matter. (See *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 116, fn. 6 [45 Cal.Rptr.3d 730, 137 P.3d 914] (*Kearney*).) "In accordance with traditional notions of judicial restraint, . . . it is appropriate and prudent to wait until we are faced with an instance in which a prosecutor has chosen to charge a criminal offense on the basis of such conduct before addressing the legal issues that might be raised in such a prosecution." (*Ibid.*)

## II. *Section 632*

In 1967, the Legislature enacted section 632 as part of the California Invasion of Privacy Act (Privacy Act), to address concerns that "advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." (§ 630.)

■ Section 632 prohibits recording or eavesdropping on a telephone conversation without the consent of all parties to the conversation. Specifically, section 632, subdivision (a) imposes liability on "Every *person* who, intentionally and without the consent of all parties to a *confidential communication,* by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . . ." (Italics added.)

■ Section 632, subdivision (b) defines the term " '*person*' " to include: "an individual, business association, partnership, *corporation,* limited liability company, or other legal entity, and an individual acting or purporting to act for or on behalf of any government or subdivision thereof, whether federal, state, or local, but excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication." (Italics added.) Section 632, subdivision (c) defines " '*confidential communication*' " to "include[] any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a

public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

█ Under these provisions, section 632 prohibits unconsented-to recording or monitoring regardless of the content of the conversation or the purpose of the monitoring, and is intended to protect rights separate and distinct from the right to prevent the disclosure of improperly obtained private information. (*Flanagan, supra,* 27 Cal.4th at pp. 775–776.) " 'While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.' " (*Id.* at p. 775, quoting *Ribas v. Clark* (1985) 38 Cal.3d 355, 360–361 [212 Cal.Rptr. 143, 696 P.2d 637].) When an unannounced party listens to a telephone conversation, this "secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements." (*Ribas, supra,* 38 Cal.3d at p. 361, citing Comment, *Electronic Surveillance in California: A Study in State Legislative Control* (1969) 57 Cal. L.Rev. 1182, 1232.) "A new audience—either electronic or human—has been introduced: an audience whose size and very existence are outside the speaker's control . . . ." (*Electronic Surveillance, supra,* 57 Cal. L.Rev. at p. 1232; see *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 234 [74 Cal.Rptr.2d 843, 955 P.2d 469]; *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 915 [85 Cal.Rptr.2d 909, 978 P.2d 67]; *Warden v. Kahn* (1979) 99 Cal.App.3d 805, 813–814 [160 Cal.Rptr. 471].) Thus, section 632 requires the assent of all parties to a communication before another may listen.

This reasoning—that the crux of section 632 is the right to prevent a simultaneous dissemination to an unannounced listener—was crucial to the California Supreme Court's resolution of two conflicting lines of cases pertaining to the meaning of a "confidential communication" under section 632. (See *Flanagan, supra,* 27 Cal.4th at pp. 768, 772–774.) One line of authority held that a conversation is confidential if a party to the conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded. (*Id.* at p. 772; see *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1488–1490 [250 Cal.Rptr. 819] (*Frio*).) Under this authority (known as the *Frio* test), a person proves a conversation is confidential simply by showing that he or she had an "objectively reasonable expectation

that the conversation is not being overheard or recorded." (*Flanagan, supra*, 27 Cal.4th at pp. 768, 772–773.) The other line of authority held that "a conversation is confidential only if the party has an objectively reasonable expectation that the *content* will not later be *divulged to third parties*." (*Id.* at pp. 768, 773–774, italics added; see *O'Laskey v. Sortino* (1990) 224 Cal.App.3d 241, 248–249 [273 Cal.Rptr. 674]; *Deteresa v. American Broadcasting Companies, Inc.* (9th Cir. 1997) 121 F.3d 460, 464–465.)

 After examining section 632's language and purpose, the *Flanagan* court endorsed the *Frio* standard and disapproved the *O'Laskey v. Sortino, supra*, 224 Cal.App.3d 241 line of cases. (*Flanagan, supra*, 27 Cal.4th at pp. 768, 774–776.) The high court stated that under the *Frio* test, "confidentiality" requires " '*nothing more than the existence of a reasonable expectation by one of the parties that no one is "listening in" or overhearing the conversation.*' " (*Flanagan, supra*, 27 Cal.4th at pp. 772–773.) The court reasoned that "[b]y focusing on 'simultaneous dissemination,' not 'second-hand repetition' [citation], the *Frio* definition of 'confidential communication' . . . better fulfills the legislative purpose of the Privacy Act by giving greater protection to privacy interests than does the *O'Laskey* standard." (*Id.* at p. 775.) The court also found its conclusion was supported by the Legislature's recent amendments to the Privacy Act adding specific protections for cordless and cellular phone conversations (see § 632.6), which the high court stated "indicates . . . that the Legislature's ongoing concern is with eavesdropping or recording of conversations, not later dissemination." (*Flanagan, supra*, at p. 776.) Thus, an actionable violation of section 632 occurs the moment the surreptitious recording or eavesdropping takes place, regardless whether it is later disclosed. (*Flanagan*, at p. 775; see *Friddle v. Epstein* (1993) 16 Cal.App.4th 1649, 1659–1661 [21 Cal.Rptr.2d 85]; see also *Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 167 [1 Cal.Rptr.3d 536]; *Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 929 [33 Cal.Rptr.2d 766].)

With this overview, we turn to address the three issues raised on appeal. First, does section 632's statutory prohibition against eavesdropping apply when a corporate employee secretly monitors a conversation between another corporate employee and a customer? Second, does the summary adjudication record show as a matter of law plaintiffs' conversations with CashCall employees were not "confidential communications"? Third, does the summary adjudication record establish as a matter of law that CashCall adequately notified plaintiffs that their telephone conversations were being monitored?

### III. *Monitoring Conversations Between Corporate Employee and Customer*

The summary adjudication record shows CashCall monitored 547 telephone calls between CashCall employees and plaintiff borrowers during the class period. Most of these phone conversations concerned debt collection issues. CashCall monitored the calls for quality control purposes, and the monitoring was performed by the supervisors using CashCall's electronic software or by physically sitting next to the CashCall representative and plugging into the call. The calls were not recorded; the supervisor would listen to the call while the conversation was occurring.

The trial court found that even assuming the telephone calls were "confidential communications" within the meaning of section 632 and the parties were not informed of the monitoring, the monitoring was not prohibited under section 632 because eavesdropping requires three parties and there were only two parties to the conversation: the corporate defendant (CashCall) and the plaintiff borrower. Plaintiffs challenge this conclusion on appeal, contending the interpretation of section 632 is contrary to the statutory language and intent. We agree.

■ The statute prohibits a "person" from overhearing a confidential communication without the consent of "all parties." (§ 632, subd. (a).) A " 'person' " is defined to "include[]" an "individual" and a "corporation." (§ 632, subd. (b).) The word "include" generally is a word of expansion, not limitation. (See *Flanagan, supra*, 27 Cal.4th at p. 774.) Thus, on its face, the statute prevents a corporation *and* an individual from secretly monitoring a conversation, regardless whether the individual is acting for his or her own purposes or on behalf of the corporation. A corporation is liable for the conduct of its employees acting within the scope of their employment. The statute further contains no exceptions applicable when a business monitors a telephone conversation even if the monitoring is for a legitimate business purpose. Moreover, section 632 uses a different statutory term, "parties" (rather than "persons"), to identify the individuals who are the conversation participants from whom consent is required before the conversation may be monitored/recorded. (§ 632, subd. (a).) This difference supports the view that for purposes of determining who must give consent, the corporation is not a single unit and all participants to the conversation must give consent before the conversation may be monitored. Viewing the statute as it is written, there is no basis for concluding a corporation cannot be held liable when it directs one of its employees to secretly monitor a telephone conversation between a customer and another employee.

■ CashCall nonetheless argued, and the trial court agreed, that as a matter of law a corporation cannot be liable for "eavesdropping" because a

"third party" did not listen to plaintiffs' conversations. In support, CashCall cited *Black v. Bank of America* (1994) 30 Cal.App.4th 1 [35 Cal.Rptr.2d 725], which upheld a judgment sustaining a corporate bank's demurrer to a tort claim alleging a conspiracy between the corporation and several of its employees. (*Id.* at pp. 4–6.) The *Black* court relied on the well-settled rule that when a corporate employee acts in the course and scope of his or her employment, the corporation and the employee constitute a single actor, and therefore for purposes of tort law there can be no conspiracy between a corporation and corporate employee because a corporation cannot conspire with itself. (*Id.* at pp. 5–6.)

 We agree with *Black*'s holding. Because a corporation is a legal fiction that cannot act except through its employees or agents, a corporation and its employees generally function as a single legal unit and are the same legal "person" for purposes of applying various tort, agency, and jurisdiction principles. (See *Fiol v. Doellstedt* (1996) 50 Cal.App.4th 1318, 1326 [58 Cal.Rptr.2d 308]; *Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1564 [265 Cal.Rptr. 597].) We also agree with CashCall that we must presume the Legislature was aware of this settled law when it enacted section 632. (See *Nelson v. Pearson Ford Co.* (2010) 186 Cal.App.4th 983, 1008 [112 Cal.Rptr.3d 607].)

However, the presumption the Legislature knew of a particular jurisprudence when it enacted a statute must be viewed in light of another equally important rule that when statutory language does not explicitly address a subject and the language is potentially susceptible of differing constructions, we must presume the Legislature intended reasonable results consistent with its expressed purpose. (See *People v. Zambia* (2011) 51 Cal.4th 965, 972 [127 Cal.Rptr.3d 662, 254 P.3d 965]; *City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 [76 Cal.Rptr.3d 483, 182 P.3d 1027].) Incorporating corporate conspiracy principles into section 632 would undermine its statutory purpose.

 The Legislature enacted section 632 to ensure an individual's right to control the firsthand dissemination of a confidential communication, and expressed its intent to strongly protect an individual's privacy rights in electronic communications. (§ 630; see *Kearney, supra*, 39 Cal.4th at p. 125 ["California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording [and monitoring] of telephone conversations without the knowledge or consent of *all* parties to the conversation."]; *Flanagan, supra*, 27 Cal.4th at p. 775 [The "philosophy [of protecting an individual's privacy right] lie[s] at the heart of virtually all the decisions construing the Privacy Act"].) When a corporate employee secretly monitors a conversation between a customer and

another employee, this statutory purpose is defeated. The statute protects the consumer's right to know *the audience* to whom he or she is speaking, and for this purpose it does not matter to a customer that two corporate employees are considered the same "unit" for purposes of conspiracy law. The violation of the protected privacy right is the same regardless of who employs the secret listener. Even if the speaker knows the information will be ultimately transmitted to other corporate employees, section 632 "protects against intentional, nonconsensual" monitoring or recording of telephone conversations "regardless of the content of the conversation" or the fact that the information will be later disclosed. (*Flanagan, supra,* 27 Cal.4th at p. 776.)

 In this regard, CashCall does not dispute that a corporation violates section 632 and may be held liable for civil damages if one of the corporate employees "records" a confidential communication without adequately notifying all parties to the conversation, even if the recording was for legitimate business purposes. (See *Kearney, supra,* 39 Cal.4th at p. 126.) A recording by its nature requires only a second party to engage in the prohibited conduct; liability attaches if the party performing the recording is a participant to the conversation. (See *Warden v. Kahn* (1979) 99 Cal.App.3d 805, 812 [160 Cal.Rptr. 471]; *Forest E. Olson, Inc. v. Superior Court* (1976) 63 Cal.App.3d 188, 191–192 [133 Cal.Rptr. 573].) CashCall nonetheless asks us to create a different rule with respect to eavesdropping by corporate employees because eavesdropping requires a third party. However, for purposes of section 632, the privacy rights affected are the same regardless whether a conversation is secretly recorded by a machine or monitored by a human being. Although a recording preserves the conversation and thus could cause greater damage to an individual's privacy in the future, these losses are not protected by section 632. (See *Lieberman v. KCOP Television, Inc., supra,* 110 Cal.App.4th at p. 167.) Instead, section 632 protects only the speaker's right to know and control the firsthand dissemination of the conversation as it is occurring. (*Lieberman,* at p. 167.) Because this right is violated regardless whether a business records or monitors a conversation, it is not reasonable to conclude the Legislature would intend a different rule to apply with respect to each of these intrusions.

 CashCall contends "a broadly expressed policy cannot extend the reach of a statute beyond its express scope." (See *Klein v. United States of America* (2010) 50 Cal.4th 68, 77–85 [112 Cal.Rptr.3d 722, 235 P.3d 42].) We agree. But in this case our interpretation of section 632 is supported by the language of the statute. The statute expressly prohibits surreptitious monitoring without the consent of "all parties" to the conversation and specifically imposes liability on a corporation for improper eavesdropping. (§ 632, subds. (a), (b).) Under this language, CashCall can be held liable for

directing its supervisory employees to monitor confidential communications between employees and customers without properly notifying the customer about the monitoring.

In support of its arguments, CashCall relies on two unpublished federal decisions and one Public Utilities Commission (PUC) opinion. (See *Thomasson v. GC Services Limited Partnership* (9th Cir. 2008) 321 Fed.Appx. 557 (*Thomasson*); *Membrila v. Receivables Performance Management, LLC* (S.D.Cal., Apr. 6, 2010, No. 09-CV-2790-IEG (RBB)) 2010 U.S.Dist. Lexis 33565 (*Membrila*); *Re Monitoring of Telephone Conversations Rulemaking* (1983) 11 Cal. P.U.C.2d 692 (*PUC Rulemaking Decision*).)[3]

In *Thomasson*, the Ninth Circuit held in an unpublished decision that a limited partnership did not violate section 632 when its supervisory employees monitored conversations between customers and the partnership's employees. (*Thomasson, supra*, 321 Fed.Appx. at p. 559.) The court stated that "there were only two parties to the telephone calls in this case: [the plaintiffs and the defendant limited partnership]" and "[t]herefore, the [limited partnership's] alleged call monitoring cannot constitute eavesdropping, and cannot violate [section 632] as a matter of law." (*Ibid.*)

*Thomasson* is unhelpful because it contains no supporting analysis, other than to note that eavesdropping refers to a "*third party* secretly listening to a conversation." (*Thomasson, supra*, 321 Fed.Appx. at p. 559, italics added.) With respect to this point, *Thomasson* cited only to a PUC administrative rulemaking decision that is consistent with the determination we reach in this case. (*PUC Rulemaking Decision, supra*, 11 Cal. P.U.C.2d 692.) In this 1983 administrative opinion, the PUC adopted regulations governing the monitoring of telephone conversations by public utilities and business customers. These regulations generally *prohibit* monitoring by businesses unless notice is given to the parties to the conversation (by beep tones or a monitoring announcement) or the parties' consent is obtained. (*Ibid.*; see *Air Transport Assn. v. Public Utilities Com. of State of California* (9th Cir. 1987) 833 F.2d 200, 201 ["The [PUC] regulation effectively prohibits telephone customers in California from surreptitiously overhearing or recording conversations without notice to the parties to the conversation."].)

CashCall's reliance on other portions of *PUC Rulemaking Decision* is unhelpful. CashCall contends *PUC Rulemaking Decision* defined " 'Monitoring' " as " 'the use of monitoring equipment to allow a third person to

---

[3] In California courts, "[u]npublished federal cases are not binding authority but they may be cited as persuasive." (*Hall v. Goodwill Industries of Southern California* (2011) 193 Cal.App.4th 718, 727, fn. 2 [123 Cal.Rptr.3d 274]; see *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 548, fn. 9 [87 Cal.Rptr.3d 99].)

overhear the telephone conversation of two or more persons.' " (Italics omitted, quoting *PUC Rulemaking Decision, supra*, 11 Cal. P.U.C.2d at p. 703.) However, by defining monitoring in this fashion, the PUC did not address the issue presented here regarding whether a corporate supervisor and a corporate employee are two persons for purposes of the prohibited eavesdropping under section 632. Additionally, contrary to CashCall's suggestions, the PUC's " '[a]dministrative monitoring' " and " '[s]ervice observing' " exceptions have no applicability here. (*PUC Rulemaking Decision*, at p. 703.) The PUC excluded these functions from its regulations only when these functions are "performed by *telephone utilities* . . . as authorized by our decisions." (*Ibid.*, italics added.) Because the monitoring at issue here was performed by CashCall and not "telephone utilities," the exception is not relevant here.

We additionally find unavailing CashCall's reliance on a second unpublished federal decision, *Membrila, supra*, 2010 U.S.Dist. Lexis 33565. There, the plaintiff alleged a debt collection business " 'surreptitiously recorded' " his telephone conversation with company employees without giving adequate notice at the outset of the call. (*Id.* at pp. *1–*2.) The court found the plaintiff *did* state a cause of action for violation of section 632, noting, "it is a violation of this section [for a business] to 'record[] the conversation without first informing all parties to the conversation that the conservation is being recorded.' " (*Membrila, supra*, at pp. *7–*8.) But the *Membrila* court found the plaintiff failed to state a claim under section 631 because that statute pertains only to eavesdropping by wire and not to recording of conversations. (*Membrila*, at pp. *6–*7.)

In its appellate brief, CashCall relies on the *Membrila* court's discussion of the plaintiff's *section 631* claim to argue that the decision supports its arguments. (*Membrila, supra*, 2010 U.S.Dist. Lexis at pp. *6–*7.) This reliance is misplaced. The *Membrila* court's discussion of section 631 pertained only to the recording issue and has no applicability to the issue raised here relating to whether a business illegally eavesdrops when it directs its employees to surreptitiously listen in on telephone conversations.

We conclude the court erred in granting summary adjudication on plaintiffs' section 632 claim based on the court's finding there was no illegal eavesdropping because there were only two parties to the alleged monitored telephone conversations. This holding means only that we disagree with the trial court's conclusion that plaintiffs' section 632 claim fails as a matter of law because the person allegedly secretly monitoring the telephone conversation was employed by the same entity as the other known party to the call. To recover, plaintiffs will still need to prove the other requisite elements of a section 632 claim, including a reasonable expectation of privacy and that their communications were "confidential."

## IV. *Did Telephone Conversations Constitute "Confidential Communications"*

CashCall alternatively urges this court to affirm the summary adjudication based on the other independent grounds raised in its motion pertaining to whether the telephone conversations were "confidential communications." Specifically, CashCall argued (1) the conversations were not confidential because a reasonable person would expect the content of the conversation would be disclosed to third parties and (2) plaintiffs were advised "at the outset of the borrower/lender" relationship of CashCall's intent to monitor the telephone calls. We conclude CashCall did not meet its summary adjudication burden to establish it is entitled to prevail on either of these theories.

In reaching these conclusions, we do not intend to suggest an opinion whether plaintiffs will ultimately prevail on these issues at trial. The issue whether there exists a reasonable expectation that no one is secretly listening to a phone conversation is generally a question of fact that may depend on numerous specific factors, such as whether the call was initiated by the consumer or whether a corporate employee telephoned a customer, the length of the customer-business relationship, the customer's prior experiences with business communications, and the nature and timing of any recorded disclosures. In this case, we determine only that on the limited record before us factual issues exist on the reasonable expectation issue and thus summary adjudication on plaintiffs' section 632 claim was not warranted.

### A. *Plaintiffs' Reasonable Expectations Conversations Would Not Be Monitored*

Section 632 applies only to a "confidential communication" (§ 632, subd. (a)), defined to "include[] any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering . . . or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded" (§ 632, subd. (c)).

A communication is "confidential" under this definition if a party to the conversation had an *objectively reasonable expectation* that the conversation was *not being overheard or recorded*. (*Flanagan, supra,* 27 Cal.4th at pp. 768, 774–776.) The issue whether there exists a reasonable expectation that no one is secretly recording or listening to a phone conversation is generally a question of fact. (See *Lieberman v. KCOP Television, Inc., supra,* 110 Cal.App.4th at p. 169 ["[i]t is for the jury to decide whether under the circumstance presented [the plaintiff] could have *reasonably* expected that the

communications were private" and thus have engaged in a protected "confidential communication" under § 632]; see also *Sanders v. American Broadcasting Companies, supra,* 20 Cal.4th at p. 926 [noting generally the factual assessment of the reasonableness of a privacy expectation].)

As the party moving for summary adjudication, CashCall had the burden to present evidence showing plaintiffs (and the class members) had no reasonable expectation of privacy as a matter of law and/or that plaintiffs would not be able to prove this element of the section 632 claim. In seeking to meet this burden, CashCall argued it was "objectively unreasonable" for plaintiffs to expect their communications would be confidential because any reasonable caller would know the information disclosed to a CashCall customer service representative would be shared within the company. On appeal, CashCall similarly argues that under the circumstances any reasonable borrower would understand "information disclosed to CashCall would be disseminated to 'those employees who need to know that information to provide products and services . . . .' "

These arguments reflect a misunderstanding of the applicable legal standard. The fact that plaintiffs may have known the information discussed in their phone calls would be disclosed to other CashCall employees does not mean plaintiffs had no reasonable expectation that their telephone conversations were not being *secretly overheard*. In *Flanagan,* the California Supreme Court held the statute's reasonable expectations test pertains to the question whether there is a reasonable expectation that the conversation is being monitored or recorded. (*Flanagan, supra,* 27 Cal.4th at pp. 774–776.) Under this standard, the fact that the borrower knows or should know the information will be shared with coemployees or other parties does not change the confidential character of a communication for purposes of section 632. (*Flanagan,* at pp. 774–776.)

In seeking to avoid this conclusion, CashCall relies on *People v. Maury* (2003) 30 Cal.4th 342 [133 Cal.Rptr.2d 561, 68 P.3d 1] (*Maury*), decided one year after *Flanagan. Maury* does not support CashCall's position.

*Maury* was a death penalty case in which the defendant made several telephone calls to a crime tip hotline after he murdered and/or raped a victim to give information about the crimes. (*Maury, supra,* 30 Cal.4th at pp. 359–372.) On appeal, the defendant argued the trial court violated his Fourth Amendment rights in denying his motion to suppress evidence of these telephone calls. (30 Cal.4th at pp. 381–382.) To show he had a reasonable expectation of privacy, the defendant relied on representations that the crime tip hotline guaranteed anonymity to its callers and that the program managers (as agents of the police) violated this guarantee when they taped his telephone conversations without a search warrant. (*Id.* at pp. 384–388.)

In rejecting this claim, the *Maury* court noted the taped conversations did not violate section 632 because section 633.5 specifically creates an exception to section 632, allowing recording of a confidential communication " 'for the purpose of obtaining evidence reasonably believed to relate to the commission by another party to the communication of . . . any felony involving violence against the person . . . .' " (*Maury, supra,* 30 Cal.4th at p. 385 & fn. 10.) The *Maury* court also stated that "any expectation that the police would not monitor a telephone call voluntarily initiated by defendant to the [crime tip hotline], is simply not an expectation . . . warranting Fourth Amendment protection." (*Id.* at p. 385, italics omitted.)

The section 633.5 crime exception and the *Maury* court's Fourth Amendment analysis as applied to the criminal defendant's telephone calls are inapplicable here. In arguing for a broader reading of the *Maury* decision, CashCall relies on a paragraph in the *Maury* opinion in which the California Supreme Court quotes from the trial court's order denying the suppression of the evidence. (*Maury, supra,* 30 Cal.4th at p. 386.) Although the *Maury* trial judge's statements can be read as following the discredited *O'Laskey* standard, there is nothing in the *Maury* decision suggesting the high court was agreeing with, or adopting, those statements with respect to section 632 or that it was overruling its *Flanagan* decision filed one year earlier. Instead, the Supreme Court discussed the trial court's order to emphasize the trial court's factual finding that the crime tip hotline never guaranteed anonymity under all circumstances and thus the defendant did not have a reasonable expectation of privacy under the Fourth Amendment. (30 Cal.4th at pp. 386–387.) This conclusion has no applicability to the section 632 issues before us.

### B. *Factual Issues Pertaining to Whether Monitoring Was Disclosed to Plaintiffs*

CashCall alternatively argues the telephone conversations were not confidential as a matter of law because the undisputed evidence established that "all callers were informed, at least at the outset of the borrower/lender relationship, that calls might be monitored."

The issue of adequate disclosure under section 632 was recently discussed by the California Supreme Court in *Kearney, supra,* 39 Cal.4th 95. In *Kearney,* the plaintiffs sued a brokerage firm (a corporation), alleging the firm's Georgia employees recorded telephone conversations with California clients without warning them of the recording. (*Id.* at p. 99.) Under Georgia law, unlike California law, only one party must consent to the secret recording of a telephone conversation. (*Ibid.*) The *Kearney* court considered primarily the choice-of-law question, and ultimately chose to apply California law, emphasizing the importance of "vigorously" enforcing section 632 to

effectuate the Legislature's "strong and continuing interest" in protecting " 'the right of privacy of the people of this state.' " (*Kearney, supra,* at pp. 125, 115, fn. 4.)

In reaching this conclusion, the California Supreme Court noted that section 632 prohibits monitoring or recording only without the consent of all parties to the conversation. (*Kearney, supra,* 39 Cal.4th at pp. 117–118, 127.) But the high court rejected the Court of Appeal's suggestion that under California law there was no need for an explicit advisement regarding the secret recording because "clients or customers of financial brokers . . . 'know or have reason to know' that their telephone calls with the brokers are being recorded." (*Kearney, supra,* 39 Cal.4th at p. 118, fn. 10.) The court stated that "The Court of Appeal . . . did not cite anything in the record or any authority establishing such a proposition as a matter of law, and in light of the circumstance that California consumers are accustomed to being informed *at the outset of a telephone call* whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently discussed in such calls." (*Ibid.,* italics added.)

Consistent with the high court's observations, we cannot accept CashCall's argument that it provided adequate notice as a matter of law. First, even assuming CashCall's argument is correct that each plaintiff heard the warning message "*at the outset*" of his or her "*borrower/lender relationship*" with CashCall, this fact does not establish as a matter of law plaintiffs were adequately warned that subsequent calls would be monitored. (Italics added.) CashCall's recorded call monitoring disclosure stated: "*This* call may be monitored or recorded for quality control purposes," which would not necessarily inform a borrower that that this call *and all future calls* with CashCall may be monitored or recorded. (Italics added.)

Additionally, the undisputed evidence establishes that CashCall did not provide monitored warnings on any of its 322 outbound calls to class members. The evidence further raises factual issues as to whether all inbound callers received the message. Although the evidence showed that most inbound callers would receive the recorded message, the evidence also showed that there were various ways in which a caller could speak with a CashCall employee without hearing this message—including by pressing the "0" (operator) number or pressing "4" with an employee's direct extension.

## DISPOSITION

The court is directed to vacate its order granting CashCall's motion for summary adjudication, and to enter a new order denying the motion. Respondent to bear appellants' costs on appeal.

McConnell, P. J., and Huffman, J., concurred.

Respondent's petition for review by the Supreme Court was denied February 29, 2012, S199063.