Filed 4/19/16  Dahl v. Yee CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KELLI DAHL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>STEPHANIE YEE,<br><br>        Defendant and Respondent. | A145370<br><br>(Contra Costa County<br>Super. Ct. No. C14-01338) |

Plaintiff Kelli Dahl filed this civil action against defendant Stephanie Yee, an attorney, alleging Yee had surreptitiously recorded Dahl's reenactment of a fall during a site inspection in a previous lawsuit.  Dahl appeals from a judgment of dismissal entered after the trial court sustained Yee's demurrer to the first amended complaint without leave to amend, arguing the trial court erred in concluding Dahl had no reasonable expectation of privacy during the site inspection as a matter of law.  We affirm.

## I.  BACKGROUND

A.  *First Amended Complaint*

The first amended complaint contained four causes of action: (1) unlawful recording of a confidential communication in violation of Penal Code section 637.2 (part of the Invasion of Privacy Act contained at Pen. Code, § 630 et seq.); (2) invasion of privacy; (3) intentional infliction of emotional distress; and (4) civil conspiracy to invade privacy.  It alleged the following facts.

Dahl was employed as a senior claims adjustor for an insurance company.  While inspecting a home for a water leak, she slipped and fell on a landing leading from the

1

kitchen to the basement.  She retained attorney Gregory Jansen of Jansen & Yaple, LLP, and filed a personal injury action against the homeowner for injuries sustained.  The homeowner in that case was represented by Yee, who was employed by the law firm of Haapla, Thompson & Abern, LLP.

Attorney Jansen retained a consulting expert, Toby Gloekler, to review the circumstances of the slip and fall and form an opinion regarding the homeowner's liability.  Jansen filed a notice for a site inspection of the home so that Gloekler could visit the scene with Dahl and reenact the fall.  (See Code Civ. Proc., § 2031.010, et seq.)  Jansen became ill on the day before the inspection, and advised Yee that Gloekler and Dahl would be attending without him.

On the day of the site inspection, Yee greeted Gloekler and Dahl at the home.  Jansen's secretary, Melissa Kongvongsay, also attended the inspection.  Gloekler initially went down the stairs to the basement and took some measurements while the others remained in the kitchen.  When Gloekler finished taking measurements, he called Dahl to the entryway to the landing to begin the reenactment.  Yee followed and, when Gloekler asked her for some privacy, said she had a right to be there.  Gloekler and Dahl decided to proceed with the reenactment rather than run the risk they would not be readmitted to the home if they left.

Plaintiff turned her back toward Yee and reenacted the fall.  Yee secretly turned on the recording function of her iPhone and recorded the reenactment, but stopped about 12 seconds later when Gloekler walked up the stairs.  Gloekler did not see Yee recording the proceedings and conversed briefly with Dahl before going back down the stairs and asking questions about the fall.  Yee, still behind Dahl and out of Gloekler's view, began recording again.  After about 44 seconds, Gloekler came up the stairs again and saw that Yee was recording Dahl.  He asked Yee if she was recording the reenactment and said, "That's not fair."  Dahl turned around and was "shocked" that Yee was recording her without her knowledge.  Dahl told Yee she had not given her permission to record her and Yee stopped recording at that time.

2

Gloekler, Dahl and Kongvongsay contacted attorney Jansen, who called Yee and told her it was improper for her to observe and record his client and his expert. Yee insisted she had the right to be present and record the proceedings and refused to give them any privacy inside the home. Jansen instructed Gloekler, Dahl and Kongvongsay to leave the premises.

The following day, Jansen spoke to Yee on a conference call with one of her senior partners. He asked them to give the recording to Dahl and to allow her to continue the site inspection. His request was refused. Jansen later obtained a copy of the recording through discovery, but his request that Yee turn over all copies of the recording was refused.

B. *Demurrer*

Yee filed a demurrer to the first amended complaint on the ground it did not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) She argued: (1) Penal Code section 632 did not apply because that section requires eavesdropping on a "confidential communication," and Dahl's conversation with Gloekler was not confidential within the meaning of the statute; (2) the claim for invasion of privacy failed because Dahl had no reasonable expectation of privacy in light of Yee's presence at the site inspection; (3) Yee's conduct was not "outrageous," as is necessary to support a claim for intentional infliction of emotional distress; and (4) the facts alleged do not show a conspiracy between Yee and her law firm. In her opposition, Dahl argued it was an issue of fact as to whether she had a reasonable expectation of privacy when conducting discovery with a consulting expert, citing the work product and attorney client privileges.

C. *Ruling*

The trial court issued a tentative opinion sustaining the demurrer without leave to amend. "1st C/A (Penal Code 632). [Dahl]'s own allegations show that [her] reenactment was not a 'confidential communication,' as a matter of law. (Pen. Code 632, subd. (c).) [Dahl] was in active litigation, was in the adversary party's residence, and was participating in a formal discovery proceeding knowing that the adversary party's

3

attorney was present and was observing the re-enactment closely—having denied a request for privacy. . . . [Yee] was 'recording' the re-enactment with her eyes and ears, and the fact that she also recorded a part of the re-enactment electronically is of no significance[.] 2d C/A (Invasion of Privacy). For the reasons stated above, [Dahl] had no reasonable expectation of privacy when performing the re-enactment, as a matter of law. 3rd C/A (Intentional Infliction). Even if [Yee]'s conduct in electronically recording the re-enactment were somehow deemed unethical (the Court makes no such finding), that conduct was still not 'outrageous' as a matter of law. [Citations.] 4th C/A (Civil Conspiracy). There is no cause of action for civil conspiracy; conspiracy is simply a theory under which vicarious liability may be imposed on one defendant for tortious conduct by another defendant. In the case at bar, [Dahl] has alleged no tortious conduct by any party other than [Yee]: this cause of action would appear to be entirely duplicative of the Second Cause of Action. Further, for the reasons stated above, [Dahl] had no reasonable expectation of privacy when performing the re-enactment, as a matter of law."

After hearing argument from the parties, the court adopted its tentative ruling and sustained the demurrer without leave to amend. Judgment was entered dismissing the action and this appeal follows.

## II. DISCUSSION

### A. *Standard of Review*

"In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law. [Citations.] We then determine if those facts are sufficient, as a matter of law, to state a cause of action under any legal theory." (*Intengan v. BAC Home Loans Servicing LP* (2013) 214 Cal.App.4th 1047, 1052.) To prevail on appeal from an order sustaining a demurrer, "the appellant must affirmatively demonstrate error. Specifically, the appellant must show that the facts pleaded are sufficient to establish every element of a cause of action and overcome all legal grounds on which the trial court sustained the demurrer. [Citation.] We will affirm

4

the ruling if there is any ground on which the demurrer could have been properly sustained." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 752.)

B. *First Cause of Action: Penal Code sections 632 and 637.2*

The Invasion of Privacy Act (Pen. Code, § 630 et seq.) is designed to "protect the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 769 (*Flanagan*).) Penal Code section 637.2 allows a plaintiff who has been injured by a violation of the act to bring an action for $5,000 or three times the amount of actual damages sustained, if any, whichever amount is greater.

Penal Code section 632, subdivision (a), imposes liability on "[e]very person who, intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication . . . ." Subdivision (b) of the same statute provides in relevant part: "The term 'person' . . . excludes an individual known by all parties to a confidential communication to be overhearing or recording the communication." Subdivision (c) defines " 'confidential communication' " to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, *but excludes a communication made . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.*" (Italics added.)

A communication is "confidential" under Penal Code section 632 "if a party to the conversation had an *objectively reasonable expectation* that the conversation was *not being overheard or recorded.*" (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1396, citing *Flanagan, supra*, 27 Cal.4th at pp. 774–776; see *Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 929.) The parties' subjective assumptions are irrelevant. (*Coulter*, at p. 929.) "The issue whether there exists a reasonable expectation that no one is secretly [recording or] listening . . . is generally a question of fact" (*Kight*, at p. 1396), but this does not mean a jury trial is required in all cases where the confidentiality of the

5

communication is in dispute. In an analogous context, our Supreme Court has recognized that when the undisputed facts show no reasonable expectation of privacy, the issue may be adjudicated as one of law. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 40; see *Chapman v. Skype, Inc.* (2013) 220 Cal.App.4th 217, 226–227 [demurrer may be granted when only one inference may be drawn from facts].)

The question before us is whether the facts alleged in the first amended complaint, if proven, would support a finding Dahl's reenactment of the fall and her communications with Gloekler were confidential. In other words, could the facts alleged support a finding by a trier of fact that Dahl reasonably expected the reenactment and her conversation with Gloekler would not be overheard or recorded?

We conclude the answer is no. Dahl and Gloekler were inside the home of a person she was suing, in the presence of Yee, that person's lawyer. When they asked Yee for privacy, she refused and said she had a right to be there. Dahl and Gloekler nonetheless proceeded with the reenactment and discussed the fall in Yee's presence. It was not objectively reasonable for Dahl to expect she would not be overheard, and she cannot state a cause of action predicated on the confidentiality of her communication.

Dahl argues Yee was not excluded from liability under Penal Code section 632, subdivision (b), which defines a "person" covered by that statute to "exclude[] an individual known by all parties to a confidential communication to be overhearing or recording the communication." Dahl submits that while the facts support an inference she knew Yee was *overhearing* her conversation with Gloekler, she did not know Yee was *recording* it.

We disagree with Dahl's interpretation of Penal Code section 632, subdivision (b), which would appear on its face to absolve Yee from liability as a person "known . . . to be overhearing *or* recording" the communication. (Italics added.) But even if she is correct that Yee is a "person" to whom the statute applies under subdivision (b), she has failed to demonstrate the communications at issue were "confidential" under subdivision (c). "[F]or purposes of [Penal Code] section 632, the privacy rights affected are the same regardless whether a conversation is secretly recorded by a machine or monitored by a

6

human being.  Although a recording preserves the conversation and thus could cause greater damage to an individual's privacy in the future, these losses are not protected by section 632.  [Citation.]  Instead, section 632 protects only the speaker's right to know and control the firsthand dissemination of the conversation as it is occurring.  [Citation.]  Because this right is violated regardless whether a business records or monitors a conversation, it is not reasonable to conclude the Legislature would intend a different rule to apply with respect to each of these intrusions."  (*Kight*, *supra*, 200 Cal.App.4th at p. 1393.)

The decision in *Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 169 (*Lieberman*), upholding the denial of an anti-SLAPP motion under Code of Civil Procedure section 425.16, does not support Dahl's claim a distinction should be drawn between Yee's act of listening and her act of recording for purposes of Penal Code section 632.  The court in *Lieberman* concluded the plaintiff doctor who was the subject of a newscast concerning his prescription of controlled substances was entitled to proceed with his lawsuit seeking damages for secret recordings made by reporters posing as patients.  (*Lieberman*, at p. 169.)  It rejected the defendant news organization's claim the conversations recorded were not confidential because the reporters had been accompanied by companions during the meetings where the recordings were made.  (*Id*. at pp. 168-169.)  The court reasoned that the companions could be found to be parties to the conversations under Penal Code section 632, subdivision (c), rather than third parties in a position to "overhear" a conversation and thus defeat the expectation of privacy.  (*Lieberman*, at pp. 168–169.)  In this case, Yee was not a "party" to the reenactment or related conversations, but was instead alleged to have overheard and recorded them without Dahl's consent.

Similarly inapposite is *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 209–210 (*Schulman*), which involved a common law claim for invasion of privacy and which we discuss in greater detail below.  The court in *Shulman* concluded the presence of third parties did not necessarily defeat a claim based on the unauthorized recording of statements made by car accident victims to emergency personnel.  (*Id*. at

7

pp. 209, 210–213, 232–233.) *Schulman* did not involve a violation of Penal Code section 632, which by its express terms does not apply to a conversation made under circumstances in which the parties may "reasonably expect that the communication may be overheard or recorded." (Pen. Code, § 632, subd. (c).)

Dahl asserts her communications with Gloekler were confidential because they were protected by the attorney-client privilege. (See Evid. Code, § 952.) It is true that statements made by a client to a consulting expert who has not yet been designated as a witness may fall within the attorney-client privilege. (*DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671, 688.) However, " '[n]o privilege of confidential communication attaches to a statement which is made in the presence of a third person who is ostensibly present.' " (*People v. Poulin* (1972) 27 Cal.App.3d 54, 64 [bailiff saw defendant comment and gesture to counsel regarding the testimony of a witness; attorney-client privilege did not prevent bailiff from testifying as to what he saw and heard]; see *People v. Urbano* (2005) 128 Cal.App.4th 396, 402–403 [defendant's comments to counsel, which were loud enough to be overheard as he sat in the jury box during his preliminary examination, were not privileged].) Dahl alleges in the first amended complaint that she spoke to Gloekler and performed the reenactment after Yee had indicated she did not intend to give them the privacy they requested. Their decision to proceed in the presence of a third party—the other side's opposing counsel—renders the attorney-client privilege inapplicable.

Dahl also argues the reenactment and her communications with Gloekler were protected by the work product rule, which "creates for the attorney a qualified privilege against discovery of general work product and an absolute privilege against disclosure of writings containing the attorney's impressions, conclusions, opinions or legal theories." (*BP Alaska Exploration, Inc. v. Superior Court* (1988) 199 Cal.App.3d 1240, 1250 (*BP Alaska*); Code Civ. Proc., §§ 2018.020, 2018.030.) It is the attorney, not the client, who is the exclusive holder of the work product privilege. (*Lasky, Haas, Cohler & Munter v. Superior Court* (1985) 172 Cal.App.3d 264, 270–279.) Dahl may have standing to assert the privilege on behalf of her attorney in a proceeding where her attorney is not a party,

8

thereby opposing its discovery or use in court (see *BP Alaska*, at p. 1258), but this does not give her a cause of action for an invasion of her statutory privacy rights based on an alleged violation of the privilege.

The trial court properly concluded that as a matter of law, the communications forming the basis of the statutory claim under Penal Code section 632 were not "confidential."

C. *Second Cause of Action: Invasion of Privacy*

The common law tort of invasion of privacy by intrusion has two elements: "(1) intrusion into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable person." (*Shulman*, *supra*, 18 Cal.4th at p. 231.) "[T]he plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source." (*Id*. at pp. 231–232.) For the reasons previously discussed, the facts alleged in the first amended complaint establish that Dahl lacked "an objectively reasonable expectation of seclusion or solitude" during the site inspection.

Citing *Sanders v. American Broadcasting Companies, Inc.* (1999) 20 Cal.4th 907 (*Sanders*), Dahl argues she did not reasonably expect to be recorded electronically even if she understood that Yee could overhear her conversation with Gloekler. We are not persuaded. In *Sanders*, an undercover news reporter obtained employment at a telepsychic marketing company and secretly recorded conversations with the plaintiff, a fellow "telepsychic," without disclosing her true identity. (*Id.* at pp. 911–912.) The plaintiff sued the reporter and her news organization, alleging causes of action for common law invasion of privacy based on intrusion as well as a violation of Penal Code section 632. The court entered judgment in favor of defendants on the section 632 claim after the jury returned a special verdict finding the communication was made in circumstances in which the parties might have reasonably expected it would be overheard by others, namely, other employees in the marketing company's office. (*Sanders*, at p. 913.) The Supreme Court concluded this determination by the jury did not compel a

9

judgment in favor of defendants on the common law claim for invasion of privacy because "the fact that coworkers may have observed a workplace interaction does not as a matter of law eliminate all expectations of privacy the participants may reasonably have had vis-à vis covert videotaping by a stranger to the workplace." (*Id*. at p. 925.) Dahl's conversation with an expert while inside the home of an adversary in litigation, in the presence of opposing counsel, is in no way comparable to a workplace conversation with someone believed to be a coworker in front of others working for the same organization.

Nor are we persuaded by Dahl's reliance on *Shulman*, *supra*, 18 Cal.4th at pages 233–234, which recognized an invasion of privacy claim might lie for accident victims who were filmed and recorded for a television show without their consent, even though their conversations could have been overheard by others who were present. The recordings in *Shulman* were made by a microphone worn by a flight nurse who also permitted a camera operator to accompany her to obtain video footage. (*Id.* at pp. 210–211.) The court found triable issues of fact as to whether the plaintiffs had an objectively reasonable expectation of privacy in the interior of the rescue helicopter, because, though the camera operator was present, " '[i]t is neither the custom nor the habit of our society that any member of the public at large or its media representatives may hitch a ride in an ambulance and ogle as paramedics care for an injured stranger.' " (*Id.* at p. 233.) Similarly, the presence of others at the scene did not automatically negate an expectation of privacy with respect to recordings of one plaintiff's conversations with medical personnel: "[B]y placing a microphone on [the nurse's] person, amplifying and recording what she said and heard, defendants may have listened in on conversations the parties could reasonably have expected to be private." (*Id.* at p. 233.)

As noted by Dahl, "*Shulman*'s discussion of possible bases for a reasonable expectation of privacy on the patient's part also suggests that a person may reasonably expect privacy against the electronic recording of a communication, even though he or she had no reasonable expectation as to confidentiality of the communication's contents." (*Sanders*, *supra*, 20 Cal.4th at p. 915.) " 'While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been

10

recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or a mechanical device. [Citations] [¶] . . . [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.' " (*Shulman*, *supra*, 18 Cal.4th at pp. 234–235.)

The decision in *Shulman* allows that there are situations in which the presence of third parties will not defeat a plaintiff's reasonable expectation that a conversation will not be recorded. This is unsurprising given the facts of that case. The plaintiffs in *Shulman* were accident victims in the midst of obtaining emergency medical assistance in a context that "carries a traditional and legally well-established expectation of privacy." (*Shulman*, *supra*, 18 Cal.4th at p. 234.) A site inspection in the presence of opposing counsel, by contrast, carries no comparable expectation. Indeed, the presence of opposing counsel would put any party on notice she should be circumspect about her comments and actions lest they be used against her in the litigation. We conclude, as a matter of law, that Yee's recording of Dahl was not an intrusion into a private place that would support a common law claim for invasion of privacy.

D. *Third Cause of Action: Intentional Infliction of Emotional Distress*

The tort of intentional infliction of emotional distress, as averred in the third cause of action, requires proof of: (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering of severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. (*Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1241–1242.) The conduct must be "so extreme and outrageous 'as to exceed all bounds of that usually tolerated in a civilized society.' " (*Wilkins v. National Broadcasting Co.* (1999) 71 Cal.App.4th 1066, 1087.)

Dahl has cited no provision preventing Yee from attending the site inspection to protect the interests of her client. (See Code Civ. Proc.,§ 2031.010.) Even if we assume

11

Yee should have asked Dahl for permission before making a video recording of the reenactment, the conduct alleged in the first amended complaint falls far short of the outrageous behavior necessary to support the cause of action. Yee recorded events that were taking place in front of her during a site inspection of her client's home. There is no allegation that anything in the recording was particularly sensitive or embarrassing, nor is there any allegation the recording was ever disseminated to a third party or used for a purpose unrelated to the litigation. The trial court was correct in concluding, as a matter of law, that the conduct was not outrageous. (See *Mintz v. Blue Cross of California* (2009) 172 Cal.App.4th 1594, 1608–1609; *Coleman v. Republic Indemnity Ins. Co.* (2005) 132 Cal.App.4th 403, 416–417 [demurrer properly sustained when facts alleged do not amount to outrageous conduct as a matter of law]; *Ross v. Creel Printing & Publishing Co.* (2002) 100 Cal.App.4th 736, 746–747 [violation of ethical rule not sufficient to satisfy element of outrageous conduct].)

E. *Fourth Cause of Action: Civil Conspiracy*

Although the parties do not specifically discuss the fourth cause of action for civil conspiracy to invade Dahl's privacy, we conclude the demurrer was properly sustained as to that claim as well. "Civil conspiracy is not an independent tort. [Citation.] Rather, it is a ' "legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." ' " (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823.) The fourth cause of action alleges Yee committed torts while acting as the employee and agent of her law firm, but no other person is alleged to have committed those torts and, as the trial court noted, the allegation of invasion of privacy appears to be "entirely duplicative" of the second cause of action, for which the demurrer was properly sustained.

F. *Leave to Amend*

"When a trial court sustains a demurrer without leave to amend, the appellate court . . . reviews that ruling for abuse of discretion. [Citation.] A trial court does not abuse its discretion when it sustains a demurrer without leave to amend if either (a) the facts and

the nature of the claims are clear and no liability exists, or (b) it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiff cannot state a claim.  [Citation.] [¶] . . . [T]he burden falls squarely on [the plaintiff] to show what facts [s]he could plead to state a cause of action if allowed the opportunity to replead.  [Citation.]  To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action.  [Citations.]  Absent such a showing, the appellate court cannot assess whether or not the trial court abused its discretion by denying leave to amend." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 889–890.)

Dahl asks us to remand the case with instructions that she be allowed to amend her first amended complaint to cure its defects by adding additional details.  She does not suggest how she would replead her claims to avoid the deficiencies discussed above, nor did she propose an amendment in the trial court.  Dahl has not established the trial court abused its discretion by sustaining the demurrer without leave to amend.

## III.  DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent Yee.

 

 
_____

NEEDHAM, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.