Filed 10/23/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERIC GRUBER,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>YELP INC.,<br><br>      Defendant and Respondent. | A155063<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-16-554784)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING;<br>NO CHANGE IN JUDGMENT |

THE COURT:*

It is ordered that the opinion filed herein on October 7, 2020, be modified as follows: On page 22, at the end of the first sentence (which ends with "and not Gruber's voice, during these calls"), add as footnote 11 the following footnote, which will require renumbering of all subsequent footnotes:

> [11] Yelp argues for the first time on appeal that extending CIPA protection to one-sided recordings of a consenting speaker would violate the "First Amendment 'right to record.' " " 'Points not raised in the trial court will not be considered on appeal. [Citation.] "Even a constitutional right must be raised at the trial level to preserve the issue on appeal [citation]." [Citation.] In civil cases, constitutional questions not raised in the trial court are considered waived. [Citation.]' (*Hepner v. Franchise Tax Bd.* (1997) 52 Cal.App.4th 1475, 1486 [61 Cal.Rptr.2d 341].)" (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 853.) Of course, "application of this principle is not automatic," and exceptions are

---

* Jackson, J.; Siggins, P. J.; Fujisaki, J.

1

made in rare case for purely legal issues, particularly "when the enforcement of a penal statute is involved [citation], the asserted error fundamentally affects the validity of the judgment [citation], or important issues of public policy are at issue [citation]." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.) However, in this case, not only did Yelp fail to raise this First Amendment right as one of its grounds for moving for summary judgment, Yelp's appellate argument on this issue consists of no more than two paragraphs at the back end of the respondent's brief. Under these circumstances, we decline to exercise our discretion to consider Yelp's unpreserved and underdeveloped constitutional challenge.

There is no change in the judgment.


Respondent's petition for rehearing is denied.


Dated:     <u>October 23, 2020</u>          <u>     SIGGINS, PJ     </u>, P. J.


A155063/*Gruber v. Yelp Inc.*

2

<u>A155063/Gruber v. Yelp Inc.</u>

| | |
|---|---|
| Trial Court: | Superior Court of the City and County of San Francisco |
| Trial Judge: | Mary E. Wiss, J. |
| Counsel: | Dakessian Law, Mardiros H. Dakessian, Zareh Jaltorossian; KP Law and Zareh Jaltorossian; Da Vega Fisher Mechtenberg, Matthew S. Da Vega, Matthew H. Fisher; Jaurigue Law Group, JLG Lawyers, Michael J. Jaurigue and Abigail Zelenski for Plaintiff and Appellant. |

Mintz Levin Cohn Ferris Glovsky and Popeo, Joshua Briones, E. Crystal Lopez, Nicholas Weiss and Matthew J. Novian for Defendant and Respondent.

Katie Townsend, Bruce D. Brown, Caitlin Vogus and Lindsie Trego for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Defendant and Respondent.

Fletcher, Heald & Hildreth and Kevin M. Goldberg for American Society of News Editors and Association for Alternative Newsmedia as Amici Curiae on behalf of Defendant and Respondent.

Jim Ewert for California News Publishers Association as Amicus Curiae on behalf of Defendant and Respondent.

David M. Giles for The E.W. Scripps Company as Amicus Curiae on behalf of Defendant and Respondent.

David Snyder for First Amendment Coalition as Amicus Curiae on behalf of Defendant and Respondent.

Barbara W. Wall for Gannett Co., Inc. as Amicus Curiae on behalf of Defendant and Respondent.

3

Juan Cornejo for The McClatchy Company as Amicus Curiae on behalf of Defendant and Respondent.

Marshall W. Anstandig for MNG Enterprises, Inc. as Amicus Curiae on behalf of Defendant and Respondent.

Sheppard Mullin Richter & Hampton and James Chadwick for MediaNews Group Inc. as Amicus Curiae on behalf of Defendant and Respondent.

Mickey H. Osterreicher for National Press Photographers Association as Amicus Curiae on behalf of Defendant and Respondent.

Davis Wright Tremaine, Laura R. Handman, Alison Schary and Thomas R. Burke for Online News Association as Amicus Curiae on behalf of Defendant and Respondent.

Wiley Rein and Kathleen A. Kirby for Radio Television Digital News Association as Amicus Curiae on behalf of Defendant and Respondent.

Baker & Hostetler, Bruce W. Sanford and Mark I. Bailen for Society of Professional Journalists as Amicus Curiae on behalf of Defendant and Respondent.

Ignacio Hernandez for Consumer Federation of California, Consumers for Auto Reliability and Safety, Privacy Rights Clearinghouse, Consumer Action and The Utility Reform Network as Amici Curiae.

Filed 10/7/20 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERIC GRUBER et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>YELP INC.,<br><br>    Defendant and Respondent. | A155063<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-16-554784) |

This is an appeal from final judgment after the trial court granted the motion for summary judgment or, in the alternative, summary adjudication of defendant Yelp Inc. (Yelp). Plaintiff Eric Gruber sued Yelp on behalf of himself and a proposed class of similarly situated persons under the California Invasion of Privacy Act (CIPA) (Pen. Code, § 630 et seq.) for allegedly recording his phone conversations with Yelp sales representatives without his notice or consent. The trial court summarily adjudicated all causes of action in Yelp's favor after finding no triable issues as to whether Yelp violated section 631, 632 or 632.7 of the Penal Code. On appeal, Gruber challenges the court's findings as to his section 632 and 632.7 claims on both legal and factual grounds.[1] For reasons discussed below, we reverse and remand this matter to the trial court for further proceedings.

---

[1] Gruber has not appealed the trial court's ruling with respect to Penal Code section 631, the provision of CIPA governing unlawful wiretapping.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

Yelp operates an Internet-based business that publishes " 'crowd-sourced reviews about local businesses' " on its Web site and mobile app. Yelp also allows business owners to advertise their businesses on Yelp's Web site and mobile app by purchasing advertisement space. To promote this aspect of the business, Yelp employs over 2,000 sales representatives to contact business owners by phone and email to solicit sales of its advertisement space. These sales representatives generally make about 55 to 70 outbound sales calls to customers and potential customers each day.

Gruber is a solo attorney practitioner and law firm owner who was contacted by phone a dozen times or more by Yelp sales representatives between March 2014 and July 2016 "attempting to sell him advertisement space." These calls, which took place between Gruber and three Yelp sales representatives, Spencer Fossen, Monica Page and Corey Young, sometimes lasted seconds and other times lasted up to 24 minutes. During these calls, in which the sales representatives' voices were recorded, Gruber discussed confidential and financial information regarding his law firm, which opened in 2012. In addition, when conversing with Young, who happened to be his friend, Gruber sometimes joked, discussed private topics including beer drinking, and used profanity or other colorful language. Gruber did not recall that any of the Yelp sales representatives notified him that their phone conversations were being recorded, and he therefore believed their conversations " 'were, and would remain, private to the parties on the telephone.' "

## I.    The Complaint.

On October 12, 2016, Gruber filed a complaint asserting three causes of action: (1) unlawful recording and intercepting of communications (Pen.

Code, § 632.7); (2) unlawful recording of and eavesdropping upon confidential communications (*id.*, § 632); and (3) unlawful wiretapping (*id.*, § 631).[2]  In this complaint, Gruber alleged that his phone conversations with Yelp sales representatives were "eavesdropped on and recorded by" Yelp and that Yelp had a policy and practice to "illegally monitor[] and record[] calls" between its sales representatives and prospective clients without providing notice or a warning that the calls would be monitored and recorded.  Gruber further alleged that Yelp's sales managers would "electronically eavesdrop and record conversations" between its sales representatives and clients without the knowledge or consent of the prospective clients as California law required.

On or about December 19, 2016, Yelp filed an answer in which it denied each of Gruber's allegations and asserted 24 separate affirmative defenses.

## II.  Yelp's Summary Judgment Motion.

Yelp moved for summary judgment or, in the alternative, summary adjudication (hereinafter, summary judgment motion) on the primary ground that its investigation had revealed none of the sales calls between Gruber and Yelp sales representatives had been monitored or recorded in their entirety.  Yelp also presented evidence regarding its policy and practice of recording phone calls between its sales representatives and prospective clients.  Specifically, evidence revealed that Yelp engages in both "two-way" and "one-way" recordings.  For two-way recordings, Yelp records the voices of both the sales representative and the prospective client.  For one-way recordings, Yelp records only the sales representative's voice.  Moreover, Yelp's one-way and two-way recordings follow different protocols.

---

[2] Unless otherwise stated herein, all statutory citations are to the Penal Code.

3

## A. *Two-way Recordings.*

Two-way recorded calls are made through Yelp's phone system and are used for training and quality purposes.[3] A sales representative must activate this system manually with a recording feature located on his or her desktop computer.

Two-sided recordings are automatically saved as voicemails accessible from the sales representative's desk phone. A file is automatically created and stored on one of two Yelp servers once the recording or call ends.[4] A separate feature of Yelp's phone system, which also requires manual activation by the sales representative, automatically generates an email to the representative after a call ends attaching a copy of the two-way recording voicemail. According to Yelp systems engineer Zachary Pleau, to his knowledge all sales representatives utilize this "voicemail–email" feature so that all of their incoming voicemails can be accessed through email. On the other hand, while Yelp sales representatives have discretion to use the two-way recording feature during their sales calls, both Fossen and Kinsey Livingston, Yelp's senior sales training manager, testified that in actuality they "rare[ly]" did.

Yelp also uses customer relationship software to manage and store all client interactions. Yelp's implementation of this software automatically creates and maintains records of all calls made to and received from a

---

[3] This system also allowed for call monitoring, wherein a sales manager could join a call between the Yelp sales representative and prospective client for training and quality purposes. Call monitoring is not at issue in this appeal.

[4] Information (including recordings) stored on these servers remains accessible through a "virtual disk," which organizes the information by date in separate files. Each of Yelp's six offices has "its own dedicated directory of voicemails, and thus two-way recordings."

4

potential client and indicates whether a particular call was silently monitored, coached by a supervisor, or recorded.

Yelp has a corporate policy that requires all sales representatives to provide notice to a phone call participant and obtain his or her consent before recording the phone call. All sales representatives receive education and training on this notice policy during their initial orientation and training and, afterward, receive regular reminders from their supervisors.

Discovery yielded no evidence of two-way recordings made of Gruber's phone calls with Yelp sales representatives. After searching the information from its customer relationship software relating to Gruber's call history, Yelp confirmed that no call between Gruber and any sales representative had been monitored, coached or two-way recorded.

### B. *One-way Recordings.*

Unlike two-way recordings, every outbound Yelp sales call is one-way recorded, meaning the sales representative's voice is captured. This type of recording is done through a system called Trivium SonicView. Similarly to every two-way recorded call, every one-way recorded call is documented in Yelp's "customer relationship platform."

Discovery revealed that Yelp sales representatives made several one-way recordings of their calls with Gruber, capturing their voices but not Gruber's voice. According to Gruber, he did not receive notice from the Yelp representatives that any of his calls were being recorded. This would have been consistent with Yelp's corporate policy of only providing notice in advance of engaging in two-way recordings. Gruber thus spoke freely on a variety of topics, including his need for funds to hire a bookkeeper to straighten out his law firm's business accounts and the fact that he answered his own phone because he did not have a receptionist. Further, Gruber had a

personal friendship with Corey Young, and therefore spoke with particular ease during their sales calls. For example, Gruber revealed personal information to Young, including information regarding his beer drinking habits; used profanity and other colorful language; and made off-color jokes. According to Gruber, had he known these phone calls were being monitored or recorded, he would not have spoken in this casual manner and would have altered both the substance and the tenor of his words.

### C. *Voice over Internet Protocol or "VoIP."*

Pleau attested in his verified declaration that Yelp sales representatives use the Shoretel phone system to place and receive calls to and from business owners. This phone system uses Voice over Internet Protocol (VoIP) technology and is used for calls made by Yelp sales representatives, whether the call is one-way or two-way recorded.

## III. The Trial Court's Order and Judgment.

On April 16, 2018, after a contested hearing, the trial court granted Yelp's motion for summary adjudication as to all causes of action after finding no triable issues as to whether Yelp violated section 631, 632, or 632.7 of the Penal Code. Specifically, the court found no triable issue of fact with respect to whether Yelp two-way recorded its calls with Gruber and that, as a matter of law, one-way recorded calls are not governed by CIPA. Alternatively, the court found that there was no triable issue of fact regarding whether Yelp's use of VoIP technology violated section 632.7. On April 27, 2018, judgment was thus entered in Yelp's favor. On June 20, 2018, Gruber's timely appeal was filed.

## DISCUSSION

Gruber challenges the trial court's grant of summary adjudication in Yelp's favor with respect to his causes of action under section 632 and section

6

632.7 on the following grounds: (1) a triable issue of fact exists as to whether Yelp recorded Gruber's voice during any of his phone conversations with its sales representatives; (2) as a matter of law, these statutes govern "one-way" recordings of conversations involving multiple parties; and (3) a triable issue of fact exists as to whether the phone system Yelp used to make and record the calls of its sales representatives, known as VoIP, qualifies as one of the telecommunications devices delineated in section 632.7.

The rules governing our review of Gruber's challenge are well established.[5] With respect to summary adjudication, a motion should be granted if the papers submitted show there is no triable issue as to any

---

[5] We have accepted and considered amicus curiae briefs from two groups. The first amicus brief, filed by Consumer Federation of California, Consumers for Auto Reliability and Safety, Privacy Rights Clearinghouse, Consumer Action and The Utility Reform Network (hereinafter, consumer amici), argues against the trial court's finding that VoIP does not qualify as one of the telecommunication devices delineated under section 632.7 but takes no position on whether summary judgment in favor of Yelp was appropriate. For reasons discussed below, we agree with consumer amici that the trial court erred in finding that Yelp's VoIP system does not come within the scope of section 632.7.

The second amicus brief, submitted by Reporters Committee for Freedom of the Press and 17 media organizations (hereinafter, media amici), urges this court to narrowly interpret CIPA so as to make it clear that when a journalist records information by "notetaking" without the consent of all parties to the conversation or communication, there is no violation of the statute. As an initial matter, we disagree with media amici that CIPA, plainly understood, unduly restricts the right of journalists to take notes when conducting interviews. Sections 632 and 632.7 apply to recordings made with "electronic" devices and so would not interfere with a journalist's right to take handwritten notes. Moreover, to the extent that media amici are referring in their brief to "notetaking" by journalists by way of a recording device, the legality of this sort of journalistic method under CIPA is not an issue presently before this court. Accordingly, we address it no further.

material fact and the moving party is entitled to prevail on a cause of action as a matter of law. (Code Civ. Proc., § 437c, subd. (f)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) The moving defendant bears the initial burden to show the cause of action has no merit, meaning "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) If the defendant meets this burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists . . . ." (*Ibid.*)

We "independently assess the correctness of the trial court's ruling by applying the same legal standard as the trial court in determining whether any triable issues of material fact exist, and whether the defendant is entitled to judgment as a matter of law." (*Rubin v. United Air Lines, Inc.* (2002) 96 Cal.App.4th 364, 372.) In making these assessments, we strictly construe the moving party's evidence and liberally construe the evidence favoring the party opposing the motion, resolving all doubts in the opposing party's favor. (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1387 (*Kight*).) We affirm an order granting summary adjudication if it is legally correct on any ground raised in the trial court. (*Ibid.*)

Finally, where, as here, the issues on appeal require interpretation of statutory provisions, we independently review the statute, applying the well-established statutory construction principles set forth in detail below (pp. 13–17, *post*). (*California Building Industry Assn. v. State Water Resources Control Bd.* (2018) 4 Cal.5th 1032, 1041; *Kight, supra*, 200 Cal.App.4th at p. 1387.)

**I.** *There is no triable issue of fact as to whether Yelp made two-sided recordings of Gruber's calls.*

The trial court found there were no triable issues as to whether Yelp violated section 632 or section 632.7 because, as a factual matter, Yelp presented undisputed evidence that "[Gruber] was not recorded during any calls with Yelp and that only Yelp's sales representatives were recorded on the calls." The record supports the trial court's finding that Gruber's voice was not recorded.

First, the verified declaration of Yelp's systems engineer Zachary Pleau, in charge of Yelp's phone system, confirmed that after personally reviewing the automated system that archives all incoming and outgoing calls, none of the conversations between Gruber and Yelp sales representatives were monitored or two-way recorded. In addition, sales representative Fossen testified in deposition that he "[r]arely" two-way recorded his sales calls and never two-way recorded his calls with Gruber. The few times (a dozen or less) that Fossen used the two-way recording feature on his phone, he adhered to Yelp's policy of providing prior notice to the prospective client "100 percent of the time." Consistent with Fossen's testimony, Kinsey Livingston, Yelp's most qualified witness with respect to certain corporate training policies, testified in deposition that all managers and new hires are trained during their first 60 days of employment on the practice of giving notification to business owners before monitoring or recording a call. Sales managers are also trained to regularly enforce this policy with reminders to their representatives.

In opposition to Yelp's showing, Gruber insists "there is substantial evidence that a majority of the calls with [him] were in fact 'two-way' recorded." Gruber reasons that, although he had conversations with three Yelp sales representatives (Fossen, Young and Page), only Fossen submitted

9

a declaration confirming that he never recorded Gruber's voice during a call (although he acknowledged sometimes two-way recording calls). In addition, Gruber points out that Pleau attested that he did not check the electronic files on the two servers that stored two-way recordings to confirm there were no recordings of Gruber's calls. Nor did Pleau deny the possibility that Gruber's voice could possibly have been recorded.

In addition to this witness testimony, Gruber relies on evidence that Yelp sales representatives are generally not required to keep track of their two-way recordings, to store them in any particular location to ensure they remain accessible, or to log whether a particular customer received the requisite notice for two-way recording. Moreover, Yelp managers do not review two-way recorded calls to confirm proper notice was given. Finally, Gruber makes much of the fact that the two-way recording files on Yelp's servers are subject to retention for only one year before being deleted. Under this retention policy, Yelp had no files of two-way recordings made prior to November 2016.

We agree with the trial court that Gruber's evidence is insufficient to raise a triable issue of fact with respect to whether Yelp two-way recorded his phone calls. First, Gruber correctly notes that, of the three sales representatives with whom he had conversations, only Fossen attested to the fact that no two-way recordings were made. However, Yelp offered other evidence to establish there were no two-way recordings of Gruber's calls with the other two representatives with whom he spoke (Young and Page).[6] Zachary Spector, Ryan Flannigan and Nicholas Cunningham, the sales managers who supervised Page and Young, signed sworn statements that

[6] At the time that Yelp filed its summary judgment motion, Page and Young were no longer employed by Yelp.

10

they had no recollection of or reason to believe the phone calls between Page or Young and Gruber were monitored. These managers also swore that they strictly enforced Yelp's policy requiring all sales representatives to notify clients before monitoring or recording calls.

In addition, while Gruber faults Yelp for not conducting searches for two-way recordings stored on its two servers, Pleau testified that he searched the email histories of all sales representatives who communicated with Gruber in relation to this case. Although Pleau found about a dozen emails with voicemail attachments in these histories, which indicated the representatives had activated the "automated voicemail to email" feature on their desktops, none of the emails contained voicemails with two-way recordings of Gruber's voice.[7] Pleau also confirmed that, because all emails of Yelp employees are archived indefinitely on the computer servers of Yelp's email service provider, Google, his search would have revealed any two-way recordings if they had existed.

This record reflects that, despite a reasonable search of the locations where any two-way recordings of Gruber's voice would likely have been found (to wit, the email histories of all the sales representatives likely to have communicated with him in connection with a Yelp sales pitch), no such recordings were identified. Moreover, as Pleau attested, searching Yelp's two servers for any potential two-way recordings would necessarily have been a manual, multistep process "highly susceptible to error" and fraught with "serious privacy concerns . . . ." Since Yelp employs about 2,300 sales representatives who each make 55 to 70 sales calls a day, this multistep process would likely take well over a year to complete and cost several million

---

[7] Yelp's email system is designed to archive all emails indefinitely, notwithstanding the manual deletion of any email by a Yelp employee.

dollars. Thus, even accepting Gruber's claim that a remote possibility exists that Yelp's servers could store, or could have stored, two-way recordings of Gruber's voice, this remote possibility, without specific facts, does not enable him to survive summary adjudication. (See Code Civ. Proc., § 437c, subd. (p)(2) ["Once the defendant . . . [meets its burden of production], the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The plaintiff . . . shall not rely upon the allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists"].) Quite simply, the law imposes no obligation on a defendant to undergo a fishing exhibition in order to search for all evidence potentially relevant to a plaintiff's claims, no matter the cost or time required, in order to obtain a summary adjudication. (See *Paul Kadair, Inc. v. Sony Corp. of America* (5th Cir. 1983) 694 F.2d 1017, 1029–1030 ["a plaintiff's entitlement to discovery prior to a ruling on a motion for summary judgment is not unlimited, and may be cut off when the record shows that the requested discovery is not likely to produce the facts needed by plaintiff to withstand a . . . motion for summary judgment"]; *Artiglio v. General Electric Co.* (1998) 61 Cal.App.4th 830, 842–843 [rejecting plaintiffs' argument that summary judgment in favor of defendant was erroneous because plaintiffs were not given an adequate opportunity for discovery where (1) plaintiffs did not ask the trial court for a continuance and (2) further discovery would not have helped plaintiffs establish a triable issue].)

Accordingly, on this record, the trial court's factual finding that there are no two-way recordings of Gruber's voice stands.

12

## II. *CIPA governs "one-sided recordings."*

The fact that plaintiff's voice was not recorded, however, does not necessarily defeat his CIPA claims. On the contrary, the second issue at hand is purely legal: Does section 632 or section 632.7 apply where, as here, a defendant records its voice but not the voice of the other party to the call?[8] The trial court concluded as a matter of law that these statutes apply only where an entire phone conversation between two or more people is surreptitiously recorded and not when only one voice is recorded (hereinafter, one-sided recordings).[9] Our legal framework is as follows.

"Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history,

---

[8] Neither party distinguishes between section 632 and section 632.7 for purposes of this analysis. In particular, neither party draws any distinction between the language or scope of section 632 and section 632.7 when addressing whether CIPA governs one-sided recordings. We likewise discuss these statutes collectively for purposes of this issue on appeal.

[9] We reject Yelp's argument on appeal that we should disregard Gruber's theory that one-sided recordings fall within the scope of sections 632 and 632.7 because he did not specifically allege that Yelp engaged in one-sided recordings in the complaint. Rather, according to Yelp, Gruber made the different allegation that Yelp "recorded a communication *between* Mr. Gruber and the Yelp Sales Representatives with whom he spoke." We find Yelp's reading of the complaint to be unduly restrictive. Moreover, in any event, Yelp does not appear to have raised this issue before the trial court, as the order under appeal does not address it. We therefore consider the argument forfeited.

13

and public policy.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387–388.)  However, "resort to legislative history is appropriate only where statutory language is ambiguous." (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 29.)

Relevant here, CIPA was enacted in 1967 for the purpose of "protect[ing] the right of privacy by, among other things, requiring that all parties consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 769 (*Flanagan*).)  " 'In enacting [CIPA], the Legislature declared in broad terms its intent "to protect the right of privacy of the people of this state" from what it perceived as "a serious threat to the free exercise of personal liberties [that] cannot be tolerated in a free and civilized society." (Pen. Code, § 630.)  This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act.' " (*Id.* at p. 775, first bracketed insertion added; see *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95, 116 (*Kearney*).)

To this end, section 632 imposes civil liability on every "person who, intentionally and without the consent of all parties to a confidential communication uses an electronic amplifying or recording device to . . . record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio . . . ." (§ 632, subd. (a).) Subdivision (c) of section 632 defines " 'confidential communication' " to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the

14

public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."

Section 632.7, subdivision (a), also relevant here, imposes civil liability on "[e]very person who, without the consent of all parties to a communication, . . . intentionally records . . . a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone . . . ." " 'Communication' includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile." (§ 632.7, subd. (c)(3).)  Thus, unlike section 632, section 632.7 does not require the communication to have been confidential.

Based on the language of both section 632 and section 632.7, Gruber argues CIPA is violated if a defendant records any portion of a conversation between two or more individuals.  Gruber reasons that the statutory language of both provisions requires "the consent of *all* parties to the conversation" before the conversation may be recorded.  (Italics added.)  As Gruber notes, in his case, *regardless* of whether his own voice was recorded, Yelp's recordings reflect that the sales representatives "repeated and recorded [his] private communications during these conversations" by, essentially, restating his words.

We agree with this reasoning.  "[W]hen statutory language does not explicitly address a subject and the language is potentially susceptible of differing constructions, we must presume the Legislature intended reasonable results consistent with its expressed purpose."  (*Kight, supra*, 200 Cal.App.4th at p. 1392, citing *People v. Zambia* (2011) 51 Cal.4th 965, 972.)  Relevant here, "California must be viewed as having a strong and continuing

15

interest in the full and vigorous application of the provisions of section 632 prohibiting the recording [and monitoring] of telephone conversations without the knowledge or consent of *all* parties to the conversation." (*Kearney*, *supra*, 39 Cal.4th at p. 125.) This requirement—that all participants to a conversation consent to its recording (or monitoring)—has often been repeated. (See *Ribas v. Clark* (1985) 38 Cal.3d 355, 360 (*Ribas*) ["the Privacy Act has long been held to prevent one party to a conversation from recording it without the other's consent"]; *Kight*, at p. 1393 ["The statute expressly prohibits surreptitious monitoring without the consent of 'all parties' to the conversation"]; *Forest E. Olsen, Inc. v. Superior Court* (1976) 63 Cal.App.3d 188, 191 ["a participant to a telephonic communication is exempted from [CIPA's] prohibition against recording such communication only if the other participant to the communication knows that it is being recorded"]; *Warden v. Kahn* (1979) 99 Cal.App.3d 805, 812 ["[section 632's] language has uniformly been construed to prohibit one party to a confidential communication from recording that communication without knowledge or consent of the other party"].)

This case law reflects an understanding that the term "communication" for purposes of CIPA connotes a singular conversation or exchange shared between two or more participants. This is consistent with the statutory language. Both section 632 and section 632.7 expressly state that no participant may record the particular "communication" or conversation unless "all parties" consent. (§§ 632, subd. (a), 632.7, subd. (a).) In setting forth this consent requirement, these statutes make no distinction between all or part of the communication. Further, they make no distinction between the speaker and the listener or between the caller and the call recipient. Rather, all are equally referred to as "parties." Thus, there is an implied

16

recognition in sections 632 and 632.7 that all parties are participants in and necessary to the singular "communication," and that all parties stand on equal footing thereto.

Thus, given the statutory language, what it includes and what it omits, we hold that sections 632 and 632.7 prohibit recording a communication, in whole or part, without the consent of all parties, no matter the particular role or degree of participation that a party has in the communication. It goes without saying that our role is to give meaning to the words of a statute; our role is *not* to insert any additional words or restrictions into an otherwise unambiguous provision. (See *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [" 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed' "].) Accordingly, we decline Yelp's suggestion that we read into these statutes any distinctions between Yelp, as the caller or the speaker, and Gruber, as the call recipient, in the absence of actual language.

In reaching this conclusion, we acknowledge that the California Supreme Court has recognized a "critical distinction" for CIPA purposes between recording a conversation and subsequently repeating the contents of the conversation. (*Flanagan*, *supra*, 27 Cal.4th at 775.) "While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device. [Citation.] [¶] As one commentator has noted, such secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements. (Comment, *Electronic Surveillance in*

17

*California: A Study in State Legislative Control* (1969) 57 Cal.L.Rev. 1182, 1232.)" (*Ribas*, *supra*, 38 Cal.3d at pp. 360–361; see *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 234–235 [same].)

Yelp alludes to this distinction when arguing that "[b]ecause there is no recording of Mr. Gruber's words, the one-sided recording is not a 'simultaneous transcription' of his statement." Yelp's argument, however, assumes the same false dichotomies that we have already rejected. As just explained, sections 632 and 632.7 do not differentiate between the speaker and the other parties to a communication, much less between the individual words or statements of any particular party. Rather, for purposes of CIPA, there is, on the one hand, the one communication (to wit, the conversation or exchange of information) and, on the other hand, the participants to that communication who stand on equal footing notwithstanding any momentary shift in their role as speaker or listener.

Further, notwithstanding Yelp's argument, when the Yelp salespeople spoke during the one-sided recordings of their conversations with Gruber, the recordings revealed *firsthand and in real time* their understanding of or reaction to Gruber's words. This differs significantly from the "secondhand repetition" that the California Supreme Court has deemed outside the scope of CIPA. (See *Dietemann v. Time, Inc.* (9th Cir. 1971) 449 F.2d 245, 249 ["One who invites another to his home or office takes a risk that the visitor may not be what he seems, and that the visitor may repeat all he hears and observes *when he leaves*. But he does not and should not be required to take the risk that what is heard and seen will be transmitted by photograph or recording, or in our modern world, in full living color and hi-fi to the public at large" (italics added)].)

Yelp also insists that the "legislative intent [of CIPA] was not to prevent businesses from recording statements made by their employees for purposes of training and quality assurance." Even if true, however, the legislative intent in this case is beyond question—to protect individuals' privacy and, to that end, to prohibit business practices, whether legitimate or not, that unnecessarily infringe on that privacy. As stated above: " '*This philosophy appears to lie at the heart of virtually all the decisions construing the Privacy Act.*' " (*Flanagan, supra*, 27 Cal.4th at p. 775, italics added.) Further, as one means to address these concerns, the Legislature enacted sections 632 and 632.7 to safeguard an individual's right to know who is listening to his or her telephone conversation, whether the listener is another individual or a business representative acting for commercial purposes. (See *id.* at p. 776 ["the Privacy Act is a coherent statutory scheme. It protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved"]; *Kight, supra*, 200 Cal.App.4th at p. 1393 ["a corporation violates section 632 and may be held liable for civil damages if one of the corporate employees 'records' a confidential communication without adequately notifying all parties to the conversation, even if the recording was for legitimate business purposes"]; see also *Kearney, supra*, 39 Cal.4th at p. 126 [describing section 632 as one of California's many "consumer-oriented privacy statutes"].)

Our interpretation of CIPA does not preclude a corporation such as Yelp from engaging in one-way recordings for the indicated purpose of sales training or quality control. Our holding does, however, make such recording illegal under CIPA if consent is not first obtained from all the participants of the call. The California Supreme Court reached the same conclusion under

19

comparable circumstances: "As made clear by the terms of section 632 as a whole, this provision does not absolutely preclude a party to a telephone conversation from recording the conversation, but rather simply prohibits such a party from secretly or surreptitiously recording the conversation, that is, from recording the conversation without first informing all parties to the conversation that the conversation is being recorded. If, after being so advised, another party does not wish to participate in the conversation, he or she simply may decline to continue the communication. A business that adequately advises all parties to a telephone call, at the outset of the conversation, of its intent to record the call would not violate the provision." (*Kearney, supra*, 39 Cal.4th at pp. 117–118 [applying section 632 to out-of-state businesses].)

Accordingly, because it is beyond question that sections 632 and 637.2 are primarily intended to protect the privacy of the communications of California residents, we conclude these statutes must be interpreted broadly to apply to *all* recordings of such communications—whether one-sided or two-sided. Any contrary interpretation would permit a business to maintain a policy and practice of recording one side of every telephone conversation with its clients without first obtaining the consent of all parties—a significant reduction in the scope of CIPA. This, in turn, would erode the very privacy interest that the act was enacted to protect.

As aptly explained by our high court, "California decisions repeatedly have invoked and vigorously enforced the provisions of section 632 (see, e.g., *Flanagan . . . , supra*, 27 Cal.4th 766, 776 ['the Privacy Act . . . protects against intentional, nonconsensual recording of telephone conversations regardless of the content of the conversation or the type of telephone involved']; *Ribas* [, *supra*,] 38 Cal.3d [at p.] 361 [citations] ['secret monitoring

denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements']; *Warden v. Kahn, supra*, 99 Cal.App.3d 805, 812–814) and have looked to the policy embodied in the provision in analyzing invasion-of-privacy claims in related contexts. [Citations.] [¶] Furthermore, in recent years the California Legislature has continued to add provisions to and make modifications of the invasion-of-privacy statutory scheme here at issue (see, for example, Pen. Code, §§ 632.5–632.7 [cordless or cellular phones], 633.6 [permitting recording by victims of domestic violence upon court order]) and in addition repeatedly has enacted new legislation in related areas in an effort to increase the protection of California consumers' privacy in the face of a perceived escalation in the impingement upon privacy interests caused by various business practices. (See, e.g., Civ. Code, §§ 1798.80–1798.84 [disclosure of consumer records], [citations].) In addition, California's explicit constitutional privacy provision (Cal. Const., art. I, § 1) was enacted in part specifically to protect Californians from overly intrusive business practices that were seen to pose a significant and increasing threat to personal privacy. [Citations.] [¶] Thus, we believe that California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording of telephone conversations without the knowledge or consent of *all* parties to the conversation." (*Kearney, supra*, 39 Cal.4th at p. 125 [Pen. Code, § 632 applies to conversations between a California resident and a nonresident corporation located outside California].)[10]

---

[10] Although *Kearney* was primarily a choice of law case, the Supreme Court's governmental interest analysis required it to assess the scope of section 632 and the interests protected by the statute. (See *Kearney, supra*, 39 Cal.4th at pp. 125–126.)

21

Adhering to these important principles and for the reasons stated, we conclude the trial court erred in granting summary adjudication on Gruber's section 632 and section 632.7 claims based on a finding that there were no illegal recordings because Yelp recorded only the voice of its sales representatives, and not Gruber's voice, during these calls. We draw no conclusions as to whether Gruber will ultimately be able to prove the other requisite elements of his claims.[11]

## III. *Yelp failed to meet its burden of production regarding whether its use of VoIP technology precludes application of section 632.7.*

The only remaining issue raised on appeal is whether a triable issue exists as to whether section 632.7 applies to calls made with a VoIP telephone. The trial court found that section 632.7 does not cover Yelp's VoIP technology because the statute delineates only the following: recorded calls involving (1) two cellular phones, (2) a cellular phone and a landline, (3) two cordless phones, (4) a cordless phone and a landline, or (5) a cordless phone and a cellular phone. (See § 632.7, subd. (a).) According to the court, "[Gruber] failed to present any evidence that would create a triable issue of material fact as to whether VoIP is a landline, cordless phone or cellular phone."

We find several flaws in the trial court's conclusion. First, as Gruber notes, the burden of production on this issue was Yelp's, as the party moving for summary adjudication. (See *Aguilar*, *supra*, 25 Cal.4th at p. 850) ["the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of

---

[11] The elements of a section 632 claim differ from those of a section 632.7 claim. In particular, section 632 requires the plaintiff to establish the subject call was a "confidential communication," while section 632.7 does not. (§§ 632, subd. (a), 632.7, subd. (a).)

22

material fact"].) As such, the trial court erred by relying on Gruber's "fail[ure] to present any evidence" on this issue when rejecting his claim on summary adjudication.

Moreover, while Yelp insists it met the burden of production on this issue, resulting in a shift of the burden back to Gruber to prove the existence of a triable issue (see *Aguilar*, *supra*, 25 Cal.4th at p. 850), the record belies Yelp's argument. The *only evidence* that Yelp produced with respect to the type of telecommunications device it used to place calls to Gruber and other prospective clients—a mandatory element under section 632.7 (*Hataishi v. First American Home Buyers Protection Corp*. (2014) 223 Cal.App.4th 1454, 1469)—is this declaratory statement: "Yelp salespeople uses version 14.2 of ShoreTel to place and receive calls to/from business owners. The phone system uses Voice-over Internet Protocol ('VoIP')." (*Sic*.)

This meager evidence did not suffice to meet Yelp's burden of production. It contains no information whatsoever regarding what type of phone or device VoIP actually is. A fortiori, it does not establish that a VoIP phone is not, and can never be, a landline, cellular or cordless device. "A summary judgment may not be granted when the moving party has failed to 'refute [a] tenable pleaded theor[y].' [Citation.]" (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 161–162.)

Yelp nonetheless seems to assume that VoIP phones are not landline, cellular or cordless phones, and therefore are not covered by section 632.7. The trial court accepted this position, referencing the fact that the California Public Utilities Commission (CPUC), which regulates other types of telephones, does not regulate VoIP. (See former Pub. Util. Code, § 710 [repealed eff. Jan. 1, 2020].)

23

We, however, question the significance of the CPUC's failure to regulate VoIP technology when it comes to the proper application of CIPA, a *legislative* scheme concerned with illegal recording of confidential communications (among other things). (See former Pub. Util. Code, § 710, subd. (d) ["This section does not affect the enforcement of any state or federal criminal or civil law or any local ordinances of general applicability, including, but not limited to, consumer protection and unfair or deceptive trade practice laws or ordinances, that apply to the conduct of business"].) Neither Yelp's brief nor the trial court's order squarely addressed this issue. Moreover, as Gruber and amici aptly note, several federal courts have refused to dismiss or summarily adjudicate a Penal Code section 632.7 claim based merely on the fact that the defendant used VoIP technology. (See, e.g., *Kahn v. Outrigger Enters.* (C.D.Cal., Oct. 29, 2013, No. 2:13-cv-03802-SVW-JCx) 2013 U.S.Dist. Lexis 201817, at p. *18 [declining to dismiss a Pen. Code, § 632.7 claim because, "while the public switchboard may not be used, it is not clear at this stage of the litigation exactly how Defendants' VoIP system works, and whether or not it relies in part on a landline telephone connection"]; *Montantes v. Inventure Foods* (C.D.Cal., July 2, 2014, No. CV-14-1128-MWF (RZx)) 2014 U.S.Dist. Lexis 95266, at p. *19 [denying motion to dismiss where "it is eminently plausible under the specific facts alleged in the Complaint that [defendant] received the subject calls using a cellular radio, cordless, or landline telephone, as required under § 632.7, especially if 'landline' is ultimately interpreted to include VoIP technology"]; see also *Roberts v. Wyndham Int'l, Inc.* (N.D.Cal., Nov. 30, 2012, Nos. 12-CV-5180-PSG, 12-CV-5083-PSG) 2012 U.S.Dist. Lexis 170719, at pp. *13–*14 ["Leaving aside for now whether VoIP—which requires internet access and therefore ostensibly could be construed as a landline form of telephone

24

communication—qualifies under [§] 632.7, the California Supreme Court noted that the amendments to the California Invasion of Privacy Act, which included [§] 632.7, reflected the California Legislature's response 'to the problem of protecting the privacy of parties to calls involving cellular or cordless telephones.' Here, Plaintiffs have alleged a communication involving at least one cellular phone, which satisfies the California Supreme Court's interpretation of [§] 632.7"].)

In each of these nonbinding federal cases, the district court declined to decide as a matter of law that section 632.7 does not govern a defendant's use of VoIP technology, reasoning that the issue warranted further factual development before a ruling could be made. We agree with this approach and adopt it for purposes of this appeal.

Accordingly, we conclude the trial court further erred in summarily adjudicating Gruber's section 632.7 on the alternative ground that Yelp's telecommunication device, VoIP, is not governed by the statute.

## DISPOSTION

The judgment in favor of Gruber and against Yelp is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion. Gruber is entitled to recover costs on appeal.

_____

Jackson, J.

WE CONCUR:

_____

Siggins, P. J.

_____

Fujisaki, J.

A155063/*Gruber v. Yelp Inc.*

26

<u>A155063/Gruber v. Yelp Inc.</u>

Trial Court:      Superior Court of the City and County of San Francisco

Trial Judge:      Mary E. Wiss, J.

Counsel:      Dakessian Law, Mardiros H. Dakessian, Zareh Jaltorossian; KP Law and Zareh Jaltorossian; Da Vega Fisher Mechtenberg, Matthew S. Da Vega, Matthew H. Fisher; Jaurigue Law Group, JLG Lawyers, Michael J. Jaurigue and Abigail Zelenski for Plaintiffs and Appellants.

Mintz Levin Cohn Ferris Glovsky and Popeo, Joshua Briones, E. Crystal Lopez, Nicholas Weiss and Matthew J. Novian for Defendant and Respondent.

Katie Townsend, Bruce D. Brown, Caitlin Vogus and Lindsie Trego for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Defendant and Respondent.

Fletcher, Heald & Hildreth and Kevin M. Goldberg for American Society of News Editors and Association for Alternative Newsmedia as Amici Curiae on behalf of Defendant and Respondent.

Jim Ewert for California News Publishers Association as Amicus Curiae on behalf of Defendant and Respondent.

David M. Giles for The E.W. Scripps Company as Amicus Curiae on behalf of Defendant and Respondent.

David Snyder for First Amendment Coalition as Amicus Curiae on behalf of Defendant and Respondent.

Barbara W. Wall for Gannett Co., Inc. as Amicus Curiae on behalf of Defendant and Respondent.

Juan Cornejo for The McClatchy Company as Amicus
     Curiae on behalf of Defendant and Respondent.

Marshall W. Anstandig for MNG Enterprises, Inc. as
     Amicus Curiae on behalf of Defendant and
     Respondent.

Sheppard Mullin Richter & Hampton and James Chadwick
     for MediaNews Group Inc. as Amicus Curiae on behalf
     of Defendant and Respondent.

Mickey H. Osterreicher for National Press Photographers
     Association as Amicus Curiae on behalf of Defendant
     and Respondent.

Davis Wright Tremaine, Laura R. Handman, Alison Schary
     and Thomas R. Burke for Online News Association as
     Amicus Curiae on behalf of Defendant and
     Respondent.

Wiley Rein and Kathleen A. Kirby for Radio Television
     Digital News Association as Amicus Curiae on behalf
     of Defendant and Respondent.

Baker & Hostetler, Bruce W. Sanford and Mark I. Bailen for
     Society of Professional Journalists as Amicus Curiae
     on behalf of Defendant and Respondent.

Ignacio Hernandez for Consumer Federation of California,
     Consumers for Auto Reliability and Safety, Privacy
     Rights Clearinghouse, Consumer Action and The
     Utility Reform Network as Amici Curiae.